UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN W. MCGILL, | Civil Action No. 11-6710 (SDW) |
| Plaintiff, | September 2, 2015 |
| v. | OPINION |
| JAMES MCGOVERN, et al., | |
| Defendants. | |

**WIGENTON**, District Judge:

This matter comes before the Court on Plaintiff John McGill's motion for leave to amend his complaint to add Gary Lanigan as a Defendant. (ECF No. 24). For the reasons set forth below, this Court will grant Plaintiff's motion for leave to amend. Because Plaintiff is a prisoner proceeding *in forma pauperis* seeking relief from a state official, however, this Court is required to screen Plaintiff's amended complaint and determine whether it is frivolous, malicious, fails to state a claim for which relief can be granted, or seeks damages from a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. For the reasons set forth below, this Court will dismiss Plaintiff's amended complaint as to Gary Lanigan, and will dismiss Plaintiff's claims against Defendant McGovern for failure to timely serve the complaint.

**I. BACKGROUND**

Plaintiff filed his initial complaint in this matter on or about November 14, 2011. (ECF No. 1). This Court dismissed Plaintiff's complaint without prejudice on May 22, 2012. (ECF No. 5, 6). Following a motion to reopen, this Court eventually reopened this matter on April 22, 2013. (ECF No. 17). This Court dismissed the Department of Corrections with prejudice, but

1

permitted Plaintiff's claims to proceed against Defendant James McGovern only at that time. (ECF No. 17). Plaintiff attempted to serve McGovern only once, with the summons returned unexecuted on August 27, 2013, as McGovern had retired and could not be located. (ECF No. 21). Plaintiff, to date, has made no further attempts to serve McGovern. On June 1, 2015, this Court therefore ordered Plaintiff to either amend his complaint to name a new Defendant who could be served or to serve Defendant McGovern within 45 days of the date of that order as the time for service under Rule 4(m) had more than run. (ECF No. 23). Plaintiff was also informed that his failure to amend his complaint or serve McGovern would result in the dismissal of his complaint. (ECF No. 23). On July 25, 2015, some ten days after the 45 days had run, Plaintiff submitted to this Court a motion to amend his complaint to add Gary Lanigan, the Commissioner of the New Jersey Department of Corrections, as a Defendant.[1] (ECF No. 24). Nearly a month later, on August 17, 2015, Plaintiff submitted another letter requesting summons be issued in an attempt to serve McGovern at a new address. (ECF No. 25).

      Alongside his motion, Plaintiff filed his purported amended complaint. The following allegations which form the basis for Plaintiff's claims are drawn from that amended complaint. Plaintiff is an inmate serving a life sentence for murder, currently incarcerated at Northern State Prison. (Document 2 attached to ECF No. 24 at 1-2). Upon his arrival at the prison, Plaintiff was assigned a job as a paralegal in the prison's law library. (*Id.* at 2). Plaintiff, allegedly with permission from his non-prisoner supervisor, stored several of his personal files on the prison library computers. (*Id.*).

---

[1] Although this Court does not rely solely upon it, Plaintiff's failure to timely reply to this Court's prior order alone merits the dismissal of his complaint.

On October 29, 2009, while he was working in the library, a corrections officer noted that Plaintiff had opened on the computer, among other files, a copy of a design for the cover of a novel he was apparently writing. (*Id.* at 3). The officer asked Plaintiff to explain the picture, and Plaintiff apparently explained the image to her. (*Id.*). Plaintiff thereafter printed materials, apparently consisting of paperwork related to his job in the law library. (*Id.* at 3-4). The officer oversaw this printing and believed Plaintiff was printing out his own private materials. (*Id.* at 4). The officer concluded from her observations that Plaintiff had broken one of the prison's rules by using the computers and printers for his personal files, and therefore asked library personnel to search the computer. (*Id.* at 4). Upon searching the computer, several of the files Plaintiff was allegedly permitted to keep on the computer were discovered and seized. (*Id.*). The officer thereafter authored a disciplinary report for violations of rule .709 – Failure to Comply with a Written Rule or Regulation of the Correctional Facility,[2] and .009 – misuse, possession, distribution, sale, or intent to distribute or sell, an electronic communication device. (*Id.*).

Plaintiff, not believing that any such rule existed, requested that he be provided with copies of the rule by the disciplinary sergeant. (*Id.*). Plaintiff's disciplinary hearing, scheduled for November 10, 2009, was therefore postponed allegedly so that the rule that was violated could be identified and so certain witnesses could be present to testify. (*Id.* at 5). Plaintiff also requested he be permitted to present certain physical evidence at the hearing, but that offer was allegedly refused by McGovern on November 10, 2009. (*Id.*). The disciplinary hearing was "reconvened" on November 12, 2009, and Plaintiff was informed the rules he had violated were on pages four, five, and seven in the disciplinary handbook for inmates of the prison. (*Id.*).

---

[2] According to Plaintiff, a .709 violation is a violation of the prison's own specific policies, as opposed to violations of the standard administrative code violations applicable to all New Jersey inmates. (Document 2 attached to ECF No. 24 at 6).

3

Those pages, which Plaintiff incorporates and attaches to his complaint, in addition to a definition of contraband, contain the following pertinent information:

> "Electronic communication device" means a device or related equipment or peripheral that is capable of electronically receiving, transmitting or storing a message, image or data. Examples of such electronic devices include, but are not limited to, all types and sizes of a computer, telephone, two-way radio, camera or video/audio player/record, fax machine, pager or beeper, personal data assistant, hand held e-mail system, or any other device containing a means of internet access or receiving, transmitting, or storing information electronically by means of audio, visual, or recorded data.
>
> . . . .
>
> "Zero Tolerance for Misuse or Possession of an Electronic Communication Device Policy" means a zero tolerance for the misuse, possession, distribution, sale, or intent to distribute or sell, an electronic communication device that is not authorized for use or retention. This policy establishes that inmates who are found guilty of an electronic communication device related prohibited act as set forth in N.J.A.C. 10A:4-4.1, 5.1 and 12 shall have their contact visit privilege terminated and shall be ineligible for consideration for any custody status lower than medium custody after the contact visit privileges are reinstated in addition to being subject to administrative action and program requirements in accordance with N.J.A.C. 10A:4, Inmate Discipline.

(Document 3 attached to ECF No. 24 at 24).

Plaintiff objected to the disciplinary hearing on November 12, 2009, arguing that these pages do not contain a rule which he could violate, but that objection was overruled and the hearing continued. (Document 2 attached to ECF No. 24 at 6). During the hearing, the officer who had filed the disciplinary report apparently admitted that she had never read what Plaintiff had printed from the computers. (*Id.*). Plaintiff's supervisor from the library also testified, allegedly stating that he had given Plaintiff permission to keep his files on the computer's hard drive, and that he believed Plaintiff was acting within his paralegal duties at the time of the

4

alleged infraction. (*Id.*). Following this testimony and the other evidence submitted at the hearing, the hearing officer, McGovern, concluded that Plaintiff was guilty of the charged violations.[3] (*Id.*). McGovern therefore ordered that Plaintiff's files be confiscated and Plaintiff be sanctioned accordingly. (*Id.* at 6-7).

Plaintiff appealed the matter to the Administrator of the prison, who upheld this ruling. (*Id.* at 7). Plaintiff thereafter appealed to the New Jersey Appellate Division. (*Id.*). While that appeal was pending, Plaintiff also filed a Tort Claims Act Notice and a property claim with the prison seeking return of his manuscripts which were contained in the confiscated files, or compensation for their loss. (*Id.*). During the appeal process, Plaintiff received further documents from the Attorney General, which Plaintiff alleges contain certain discrepancies as to the persons involved in the investigation of his disciplinary actions which would suggest that Plaintiff's guilty finding was based upon fraudulent conduct by McGovern.[4] (*Id.* at 8-9). Plaintiff also alleges that in May of 2010, the sergeant McGovern stated had provided him with the rule Plaintiff had violated denied any knowledge of the report in which McGovern made that statement. (*Id.* at 8). The New Jersey Appellate Division ultimately affirmed Plaintiff's guilty finding, and the New Jersey Supreme Court denied certification. (*Id.* at 8-9). Plaintiff alleges that, as a result of McGovern's actions, he lost his job as a paralegal and has otherwise suffered harm. (*Id.* at 9-10).

---

[3] It appears to this Court that the prison rule Plaintiff was found guilty of violating was the "Zero Tolerance Policy" expressed in the quoted portion of the manual above, although Plaintiff appears to take the position that this policy is not a prison rule.

[4] Plaintiff's chief "fraud" allegations appear to be that McGovern decided the case before one officer's investigation was completed, that the statement of the sergeant contradicts the report used by McGovern, and the testimony of an officer at the hearing conflicted with her report, and that McGovern fabricated rules which Plaintiff violated out of whole cloth. (*Id.* at 9-10).

Plaintiff's amended complaint contains only the following allegations against proposed Defendant Lanigan. Plaintiff alleges that "during the course of post hearing proceedings, Gary Lanigan became the commissioner of the New Jersey Department of Corrections."[5] (*Id.* at 10). Plaintiff alleges that Lanigan therefore "obtained a supervisory position over the Department . . . and its employees." (*Id.*). Plaintiff therefore alleges that, as commissioner, Lanigan "was aware of allegations about his underling's misconduct" but failed to correct it after the fact and therefore "allowed the fraud to continue[]." This allegation, however, does not appear to account for the fact that the last of McGovern's allegedly fraudulent behaviors occurred on November 12, 2009, with the delivery of his decision, months before Lanigan became commissioner.

## II. PLAINTIFF'S MOTION TO AMEND

Plaintiff seeks to amend his complaint to add Gary Lanigan as a Defendant in this action. Although Plaintiff makes this request for leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff has neither previously amended his complaint, nor has he perfected service, and he is therefore instead subject to Rule 15(a)(1). Pursuant to that rule a party "may amend its pleading once as a matter of course within . . . 21 days after serving it." As Plaintiff has yet to serve his complaint upon any Defendant, he is within the period during which he may amend once as a matter of right. As Plaintiff has expressed his desire to amend his complaint to add Lanigan as a Defendant and has submitted a proposed amended complaint, this Court will grant Plaintiff's motion to amend.[6]

---

[5] Publicly available documents indicate that Lanigan was confirmed as Commissioner of the New Jersey Department of Corrections in March of 2010. *See, e.g.* Commissioner's Biography, available at http://www.state.nj.us/corrections/pages/about_us/Commissioner_bio.html.

[6] Were Plaintiff's request subject to leave of Court under Rule 15(a)(2) as Plaintiff suggests, this Court would have denied leave to amend as Plaintiff's amendment is futile for the reasons set

The more complicated question, however, is whether this amendment relates back to the original filing of the complaint in November 2011. Pursuant to the Rule 15(c)(1), an

> amendment to a pleading relates back to the date of the original pleading when:
>
> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

Here, Plaintiff seeks to change the party against whom his claim is asserted by adding Gary Lanigan as an additional Defendant against whom his claims are asserted. Thus, he must meet the requirements of both Rule 15(c)(1)(B) and (C).

Even if one assumes Plaintiff meets the requirements of Rule 15(c)(1)(B), he cannot meet the requirements of 15(c)(1)(C). To meet these requirements, a plaintiff must have provided actual or imputed notice to the party to be added within 120 days of the filing of the action in question. *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). Plaintiff has, as of

---

forth below. *See, e.g., In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, 493 F.3d 393, 400 (3d Cir. 2007) (futility is sufficient ground to deny leave to amend, futility is present where a proposed amended complaint would fail to state a claim upon which relief could be granted).

this time, failed to serve the sole Defendant in this matter, James McGovern, and has presented no evidence indicating that Lanigan has received actual notice of his claims. Plaintiff must therefore show that notice can be imputed to Lanigan in order to warrant relation back. Plaintiff argues that Lanigan can be said to have been provided notice of his suit through one of two means: notice via a shared attorney with an original defendant, or through sharing an identity of interest with an originally named defendant.

"The 'shared attorney' method of imputing Rule [15(c)] notice is based on the notion that, when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 196 (3d Cir. 2001). The relevant inquiry under this method of imputing notice is "whether notice of the institution of this action can be imputed to [the Defendant to be added] within the relevant 120 day period . . . by virtue of representation [he] shared with a defendant originally named in the lawsuit." *Garvin*, 354 F.3d at 223 (quoting *Singletary*, 266 F.3d at 196). For such a method of imputation to function, there must be "some communication or relationship" between the allegedly shared attorney and the new defendant prior to the end of the 120 day period sufficient to establish that notice was most likely provided. *Id.* at 225. It is insufficient to impute notice to argue that the same attorney (such as the attorney general) would have represented both parties had they been served, a plaintiff must show that, during the 120 day period, the lawyer for the previously named defendant had communication or a relationship with the newly added defendant sufficient to impute notice. *Id.* at 226-27. Here, neither defendant, old or newly named, has been served, and no attorney has made an appearance on behalf of either. Plaintiff has provided no evidence for the supposition that the two would share an attorney other than the

8

fact that both, if they so chose, would be entitled to a defense by the New Jersey Attorney General's office. That is insufficient to establish a shared attorney, and likewise insufficient to impute notice under such a theory.[7] *Id.*

Plaintiff's remaining theory for imputing notice is that McGovern and Lanigan share an identity of interest. The identity of interest theory operates under the assumption that where "the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other," notice should be imputed where one of those parties is served. *Singletary*, 266 F.3d at 197. The central requirement for imputing notice under such a theory, however, is that the original named defendant, in this case McGovern, received notice before the running of the limitations and 4(m) period. Thus, even if one could say that the interests of a retired former employee and an executive officer of his former employer are sufficiently related, a finding this Court does not make, the failure of Plaintiff to serve McGovern clearly indicates that notice cannot be imputed from him to Lanigan. There is, in essence, no notice to impute. As Plaintiff has failed to show that Lanigan received notice within the 120 day period required by rule 15(c)(1)(C), his new claims do not relate back and would therefore be subject to the statute of limitations based upon the date of filing of the amended complaint.

---

[7] Plaintiff's supposition that the Attorney General's office received notice of two of this Court's prior orders is likewise unavailing. The Attorney General was not served with the complaint or Plaintiff's claims, only with copies of this Court's orders which directed that funds be taken from Plaintiff's accounts and reinstated plaintiff's complaint. The Attorney General represents neither purported Defendant in this matter at present, and therefore notice to the Attorney General's office of two orders is insufficient to provide shared attorney notice to Lanigan. *Garvin*, 354 F.3d at 223-27.

### III. PLAINTIFF'S AMENDED COMPLAINT

#### A. Legal Standard for *Sua Sponte* Screening

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which the plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A as Plaintiff is proceeding *in forma pauperis* and is a prisoner seeking relief from a government official.

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[8] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n. 3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se*

---

[8] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

**B. Analysis**

Plaintiff's amended complaint essentially raises only one federal claim: that Defendants denied him his Fourteenth Amendment Due Process rights through McGovern's alleged frauds during Plaintiff's disciplinary hearings in violation of 42 U.S.C. § 1983. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (the statute provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)). Here, Plaintiff claims that Defendants violated his Due Process rights by defrauding his disciplinary hearings.

In his amended complaint, Plaintiff seeks to add a § 1983 claim against Gary Lanigan arising out of McGovern's allegedly fraudulent disciplinary decisions. Aside from the relation back issues discussed above, Plaintiff's claims have two related flaws: Plaintiff has pled no direct involvement in the decision by Lanigan (who was not appointed to the DOC until months after McGovern's allegedly wrongful actions), and Plaintiff's only other claim against Lanigan

11

appears to arise under a *respondeat superior* theory of liability. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Solan v. Ranck*, 326 F. App'x 97, 100 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)); *see also Iqbal*, 556 U.S. at 676-77 (Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," a civil rights plaintiff must plead that each defendant "through the official's own individual actions, has violated the constitution"); *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (§ 1983 claims may not be based on vicarious liability, each defendant must have "personal involvement, including participation, or actual knowledge and acquiescence, to be liable"). Here, Plaintiff pleads only that Lanigan became McGovern's superior when he was appointed and confirmed in March 2010, several months after McGovern committed the alleged constitutional violations at issue. Lanigan thus could not have been personally involved as he was not a part of the Department at the time of the alleged violations. Plaintiff's only other allegations of liability as to Lanigan is that he became McGovern's superior and is therefore liable for not correcting the alleged failing, essentially an improper *respondeat superior* claim. As Plaintiff has failed to plead personal involvement through any means other than *respondeat superior* as to Lanigan, Plaintiff has failed to plead a cognizable claim for liability as to Lanigan, and his claims against Lanigan must therefore be dismissed for failure to state a claim for which relief may be granted.[9] *Iqbal*, 556 U.S. at 676-77.

---

[9] To the extent that Plaintiff also wished to raise common law fraud claims, he has also failed to allege that Lanigan was in any way involved in McGovern's alleged fraud, and has certainly not pled that fraud as to Lanigan with the particularity required by Rule 9(b). *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *District 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 527 (D.N.J. 2011); *see also Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367-68 (N.J. 1997) (common law fraud in NJ requires showing of a material misrepresentation of presently existing or past fact, knowledge or belief of the statements falsity,

Even placing personal involvement aside, because Plaintiff's new claims do not relate back for the reasons expressed above, Plaintiff's § 1983 claims against Lanigan are time barred. Actions brought pursuant to § 1983 in New Jersey are subject to a two year statute of limitations. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013). "Under federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Plaintiff alleges that he became aware of the alleged fraud in the spring of 2010. Plaintiff did not file his amended complaint, raising his claims against Lanigan, until July 2015, more than five years later. As such, Plaintiff's claims against Lanigan are barred by the statute of limitations and must be dismissed for that reason as well.

## IV. PLAINTIFF'S FAILURE TO SERVE MCGOVERN

Despite the extended period of time Plaintiff has had since the reopening of his claim against McGovern in April 2013, Plaintiff has failed to effect service upon Defendant McGovern. Pursuant to Rule 4(m), if "service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified period of time; provided that if the

---

an intention the other person rely on it, and reasonable reliance thereon by the other person resulting in damages). Even assuming a *respondeat superior* theory of liability would be appropriate in the common law fraud context, Lanigan was not McGovern's superior at the time of the allegedly fraudulent statements, and therefore could not be liable for those statements. In any event, because this Court is dismissing the only claim over which it has original jurisdiction (Plaintiff's § 1983 claim), and will dismiss McGovern from this action for the reasons stated below, this Court declines to extend supplemental jurisdiction over any such common law fraud claim against Lanigan. *See* 28 U.S.C. § 1367(c)(3).

13

plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period." Notice to the plaintiff is required prior to a *sua sponte* dismissal. *George v. Warden*, 523 F. App'x 904, 907 (3d Cir. 2013). Here, Plaintiff failed to serve McGovern within the 120 day period required by Rule 4(m). Plaintiff made only one attempt to serve McGovern, nearly two years ago, and thereafter made no further attempt until after this Court's order which informed him that this action would be dismissed if Plaintiff failed to serve McGovern issued in June 2015. As of now, Plaintiff has still not served McGovern, only making a request that he be permitted to try to serve him in August 2015, well after the 45 days this Court permitted Plaintiff in its June 2015 Order. Thus, this Court has provided plaintiff with adequate notice of its intention to dismiss the matter against McGovern should Plaintiff fail to serve him within forty five days of June 1, 2015, and Plaintiff failed to so serve McGovern. As such, dismissal of McGovern without prejudice would be appropriate absent good cause for the delay.

Although Plaintiff attempts to argue that he has shown good cause for the delay, his argument is essentially that he assumed that the Marshals would find McGovern based on their reputation for being able to find anyone after the first attempt at service failed because McGovern had retired. Plaintiff's assumption, however, does not demonstrate good cause. In the intervening two years, Plaintiff has not demonstrated that he diligently sought to locate and attempt to serve McGovern prior to this Court's 2015 order, instead suggesting that he took few, if any steps along those lines in the past two years. Plaintiff appears to have sat on his rights for two years, and only stirred when this Court informed him that his complaint was subject to dismissal under Rule 4(m). Plaintiff has therefore failed to show good cause, and no further extension is appropriate, especially in light of Plaintiff's failure to respond to the June Order within the time set by this Court. As good cause does not exist to further extend the time for

service, because Plaintiff has been provided notice of this Court's intention to dismiss his claims against McGovern should he fail to serve him within 45 days of the prior order, and as Plaintiff failed to so serve McGovern, dismissal of Plaintiff's claims against McGovern for failure to timely serve is warranted at this time. This Court will therefore dismiss Plaintiff's claims against McGovern.

## V.  CONCLUSION

For the reasons set forth above, this Court will grant Plaintiff's motion to amend, will dismiss Plaintiff's § 1983 claims against Defendant Lanigan as time barred and for failure to state a claim for which relief may be granted, and will dismiss Plaintiff's claims against Defendant McGovern for failure to timely serve in accordance with Rule 4(m). An appropriate order follows.

s/ Hon. Susan D. Wigenton,
United States District Judge
